CHARLES B. MAYNARD v. JAMES MORSE AND AARON MORSE.

*Contract. Guarantor. Notice.*

J. and A. gave the plaintiff a writing in which they jointly and severally promised to pay him whatever J. should be owing the plaintiff up to a specified time. *Held*, that both became bound to perform according to the stipulation of the writing, upon its being received by the plaintiff for property or money advanced to J., and this without notice to A. of the plaintiff's acceptance of the said writing.

ASSUMPSIT upon the following contract:

"HYDEPARK, July 17, 1855.

For value received we jointly and severally promise to pay C. B. Maynard, or order, any sum of money that James Morse may be indebted to said Maynard up to the 1st day of November

40

next, said sum not to exceed five hundred dollars at any one time and interest.                          JAMES MORSE.

AARON MORSE."

Plea, the general issue. Trial by jury, at the September Term, 1863, ALDIS, J., presiding.

The plaintiff introduced this contract, and then proceeded to show that James Morse was justly indebted to the plaintiff, up to November 1st, 1855, in the sum of $500.

The only exception taken was upon ·this point, viz: The defendant Aaron Morse, who signed the contract as surety for James Morse, claimed that the contract aforesaid was a mere guaranty, and that Aaron Morse was' entitled to notice of the acceptance of the said guaranty by Maynard, and that the plaintiff acted upon it in allowing the defendant James Morse to become indebted to him to the aforesaid amount of $500. But the court ruled otherwise, and under this ruling the defendant Aaron Morse submitted to a verdict for the plaintiff, and excepted to the decision of the court.

*Edson & Rand,* for the defendant.

*W. C. Wilson* and *H. S. Royce,* for the plaintiff.

BARRETT, J. The question is not, whether James Morse could become a guarantor, in the commercial sense, for his own debt, nor whether, if Aaron Morse had individually executed such a paper as the present, he would have been a guarantor of James, in the commercial sense, and thereupon been entitled to notice that the guaranty had been acted upon.

But it is whether, by force of the instrument in this case, the defendants became bound to perform according to its stipulation, upon its being received by the plaintiff for property or money advanced to James.

The defendants, by this paper, assume a joint obligation, to become operative upon a specified event, as constituting the consideration. If such consideration be valid to give the instrument effect as to either, it gives it effect as to both ; and it is not allowable for one of the obligors to claim exemption on the score of some

peculiar relation that he, in fact, sustained to his fellow; unless the obligee has been guilty of some fraud, or bad faith, that would avoid the obligation assumed by the tenor of the contract.

There is no question but that the obligation of the paper became effectual as to James Morse, when the plaintiff took it and advanced property to him on the strength of it. We have not been apprized of any principle or case which distinguishes between joint obligors or promissors in respect to their respective liability to the obligee or promissee, where the undertaking is for the same thing and upon the same consideration.

We see no occasion to discuss the subject of notice to a guarantor, as involved in many of the cases,—for we do not think it is involved in this, beyond the notice operated by the fact that James Morse passed off the paper for property advanced, just as the paper was upon its face intended to be used; and the effect of this act was the same as to both the joint makers of the instrument. If that act be treated in the nature of notice of the acceptance of the paper, then, by force of the joint relation of the defendants, it operated upon both to every legal intent of fixing the liability of both.

The judgment is affirmed.