The **BETHANY TRUST COMPANY, Appellant,**

v.

**Leroy HARKER, a/k/a G. Leroy Harker and Colleen Harker, husband and wife, Respondents.**

**No. WD 41550.**

Missouri Court of Appeals, Western District.

Nov. 21, 1989.

TURNAGE, Judge.

The Bethany Trust Company filed suit against Leroy Harker and Colleen Harker to recover the balance due on a promissory note. At the close of all of the evidence the Trust Company filed a motion for directed verdict against both parties. The court sustained the motion as to Leroy Harker and directed a verdict against him, but denied the motion as to Colleen. The jury returned a verdict in favor of Colleen and the Trust Company appeals contending that the court should have directed a verdict against her. Affirmed.

In April, 1974, Colleen signed and delivered a guaranty agreement to the Trust

Company in which she guaranteed to pay any indebtedness of Leroy up to the amount of $90,000. In March, 1984, Leroy delivered his promissory note to the Trust Company in the amount of $64,683.07. In addition to the note, Leroy delivered-to the Trust Company, as collateral, a contract for the sale of real estate owned by him and Colleen. Colleen had assigned her interest in the contract to Leroy and Leroy assigned his interest to the Trust Company. The buyer in that contract later defaulted and the Harker's claim against the buyer was settled for $1,000. That amount was applied on the note.

In September, 1987, the Trust Company filed suit against Leroy and Colleen alleging the execution of the note by Leroy and a balance due of $63,951.67. The Trust Company alleged that it had made the loan in reliance upon Colleen's guaranty and prayed judgment against both for the amount due on the note.

At trial Leroy testified that when he talked with Daniel Heyle, the officer at the Trust Company who handled the loan, Leroy looked through his file in the presence of Heyle. Leroy stated that there were no papers in the file containing the signature of Colleen.

When Heyle testified, he was asked if he relied upon anything other than the assignment of the real estate contract as collateral for the loan being made to Leroy. Heyle responded:

> I don't recall that I—you know, he was pledging that collateral for the note for the indebtedness that he owed the bank at that time.

Later Heyle was asked specifically if he relied upon Colleen's guaranty when he made the loan to Leroy. His response was:

> I can't say, you know, at the time that the note was—the note was made that I looked to see if the guaranty was present or whatever.
>
> I don't recall my thought process at the time. Being dated April 18th of '74, I assume that it was there, and, you know, I don't actually physically remember looking at it to see if it was there.

The Trust Company now contends that the court erred when it refused to direct a verdict against Colleen.[1]

In *Bank of Brookfield–Purdin, N.A. v. Burns*, 724 S.W.2d 262, 264[3] (Mo.App. 1986), this court stated that a verdict may be directed against a plaintiff when a claim is established as a matter of law and there is no factual question remaining for the jury.

Colleen, by her answer, did not specifically plead that the Trust Company did not rely upon her guaranty at the time it made the loan to Leroy. However, evidence concerning reliance was received without objection and the pleadings are deemed to have been amended to conform to that proof. Rule 55.33(b).

This presents the question of whether or not it was necessary for the Trust Company to prove that it relied upon Colleen's guaranty at the time it made the loan to Leroy. In 38 C.J.S. *Guaranty* § 99 pg. 1277 (1943), it is stated that the burden is upon the plaintiff to prove all of the material elements of his cause of action against the guarantor, including the fact that he acted in reliance on the guaranty. In *Manley Bros., Inc. v. Bush*, 106 Vt. 57, 169 A. 782, 784[8, 9] (1934), the court held that the burden was upon the party seeking to enforce a guaranty to prove that it relied upon the guaranty because the guarantor would not be liable otherwise. In *Connecticut Bank and Trust Co. v. Wilcox*, 201 Conn. 570, 518 A.2d 928, 931[3, 4] (1986), the court held that a continuing guaranty is enforceable if the creditor makes advances by reason of the guaranty.

The **Restatement (Second) Contracts** § 88 (1981), provides:

> A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if
>
> (a) the promise is in writing and signed by the promisor and recites a purported consideration; or
>
> (b) the promise is made binding by statute; or
>
> (c) the promisor should reasonably expect the promise to induce action or for-

---

1. No question is raised on this appeal concerning the directed verdict entered against Leroy.

bearance of a substantial character on the part of the promisee or a third person, and the promise does induce such action or forbearance.

■ Missouri apparently has not directly confronted the question of whether or not an action on a guaranty requires proof that action was taken in reliance upon the guaranty when the guaranty was not executed contemporaneously with the underlying obligation. This court finds the *Restatement, C.J.S., Connecticut Bank and Trust Company,* and *Manley Bros.* to be persuasive. Absent a showing of reliance the situation is the same as if no guaranty had been given. If the person holding the guaranty does not act in reliance upon it, then it cannot be said that the guaranty entered into the transaction or influenced it in any manner. Therefore, it would be the same situation as if the guaranty had not been executed or delivered. Obviously if the guaranty had never been given, there could be no liability on it. The same result occurs if there is no reliance shown when the Trust company made the loan to Leroy.

In this case the guaranty did not recite a purported consideration and no statute has been cited or located which makes the guaranty binding. In that situation it was incumbent upon the Trust Company to prove that the guaranty induced it to make the loan to Leroy, or in other words, to show that it relied upon Colleen's guaranty at the time it made the loan. From the testimony of the Trust Company officer who made the loan it is apparent that there was a question of whether or not the Trust Company relied upon Colleen's guaranty. Heyle's testimony presented a jury question of whether or not the Trust Company did rely upon Colleen's guaranty in making the loan. In that situation the court correctly refused to direct a verdict in favor of the Trust Company.

The judgment is affirmed.

All concur.